UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | : | CASE NO. 20-71913-JWC |
| | : | |
| BENYOUNES SERHIR, | : | CHAPTER 7 |
| | : | |
| Debtor. | : | |
| | : | |
| S. GREGORY HAYS, | : | |
| Chapter 7 Trustee for the Estate of | : | |
| Benyounes Serhir, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | ADV. PRO. NO. _____ |
| | : | |
| PLAZA HOME MORTGAGE, INC., | : | |
| PENNYMAC LOAN SERVICES, LLC, and | : | |
| U. S. SECRETARY OF HOUSING | : | |
| AND URBAN DEVELOPMENT | : | |
| | : | |
| Defendants. | : | |
| | : | |

**COMPLAINT**

S. Gregory Hays, Chapter 7 Trustee ("**Trustee**" or "**Plaintiff**") for the bankruptcy estate (the "**Bankruptcy Estate**") of Benyounes Serhir ("**Debtor**"), files this *Complaint* (the "**Complaint**") against Plaza Home Mortgage, Inc. ("**Plaza**"); Pennymac Loan Services, LLC ("**Pennymac**"); and U. S. Secretary of Housing and Urban Development ("**HUD**" and with Plaza and Pennymac, the "**Defendants**"), and respectfully shows the Court as follows:

**Jurisdiction and Venue**

1.     This adversary proceeding is initiated pursuant to Rule 7001(a) of the Federal Rules of Bankruptcy Procedure and 11 U.S.C. §§ 544, 550, and 551.

16050099v1

2.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409(a) because this adversary proceeding arises in and relates to the Chapter 7 bankruptcy case styled as *In re Benyounes Serhir,* Case No. 20-71913-JWC (the "**Bankruptcy Case**"), pending in United States Bankruptcy Court, Northern District of Georgia, Atlanta Division.

3.      This adversary proceeding constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

4.      This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157.

5.      Trustee consents to the entry of final orders or judgments by the Bankruptcy Court pursuant to Bankruptcy Rule 7008 of the Federal Rules of Bankruptcy Procedure.

6.      The Defendants are subject to the jurisdiction of this Court.

### Statement of Facts

#### a. General Background

7.      On November 19, 2020 (the "**Petition Date**"), Debtor filed a voluntary petition for relief under Chapter 7 of Title 11 of United States Code, initiating the Bankruptcy Case as a Chapter 7 proceeding.

8.      Trustee was thereafter appointed to the Bankruptcy Case as the interim Chapter 7 Trustee under 11 U.S.C. § 701(a)(1).

9.      At the conclusion of the meeting of creditors, Trustee became the permanent Chapter 7 Trustee under 11 U.S.C. § 702(d).

#### b. The Property

10.     On the Petition Date, Debtor jointly owned that certain real property commonly known as 706 Sweet Spice Way, Canton, Cherokee County, Georgia 30114 (the "**Property**")

16050099v1

jointly with Souad Oulalite.

### c. The First Security Interest Transfers

11.     On or about May 26, 2016, Debtor and Souad Oulalite executed a *Security Deed* (the "**Plaza Security Deed**") in favor of Mortgage Electronic Registration Systems, Inc. ("**MERS**") as nominee for Plaza, conveying the Property to secure a debt (the "**Plaza Debt**") in the amount of $181,649.00 (the "**First Transfer**").

12.     The Security Deed was recorded on the real property records with the Clerk of the Superior Court of Cherokee County, State of Georgia (the "**Real Estate Records**") on June 1, 2016, beginning at page 340 of Deed Book 13867 (the "**Second Transfer**", and together with the First Transfer, the "**First Security Interest Transfers**").

13.     A true and correct copy of the Plaza Security Deed, along with any riders, is attached hereto and incorporated herein by reference as Exhibit "A."

14.     Upon information and belief, Plaza is the holder of the Plaza Security Deed and any related interest in the Property arising out of the same.

15.     Upon information and belief, Pennymac is the servicer of the Plaza Debt.

16.     The execution of the Plaza Security Deed by Debtor and Souad Oulalite was not attested by an official witness as required by O.C.G.A. § 44-14-61.  This defect in attestation is apparent from the face of the Plaza Security Deed.

17.     In conjunction with executing the Plaza Security Deed, Debtor and Souad Oulalite executed a rider titled *Waiver of Borrower's Rights* (the "**Waiver**").

18.     The Waiver appears at pages 357-358 of Deed Book 13867 of the Real Estate Records.

19.     The Waiver does not include the real property description or the address of the Property.

20.     Also in conjunction with the execution of the Plaza Security Deed, a purported closing attorney signed a *Closing Attorney Affidavit* (the "**Affidavit**") in front of a purported notary public named April Mays (the "**Notary Public**").

21.     The Affidavit appears at page 359 of Deed Book 13867 of the Real Estate Records.

22.     The Notary Public did not record on the Affidavit the exact date of her notarial act.

23.     The Plaza Security Deed was not in recordable form, and, even though recorded, does not provide actual or constructive notice to a bona fide purchaser.

### d. The Second Security Interest Transfers

24.     Debtor and Souad Oulalite executed a *Georgia Partial Claim Security Deed* dated September 17, 2020 (the "**HUD Deed**"), in favor of HUD conveying the Property to secure a debt in the amount of $5,370.12 (the "**Third Transfer**").

25.     The HUD Deed was recorded on the Real Estate Records on October 13, 2020 (the "**Fourth Transfer**", and together with the Third Transfer, the "**Second Security Interest Transfers**") beginning at page 1987 of Deed Book 14541.

26.     A true and correct copy of the HUD Deed, along with any riders, is attached hereto and incorporated herein by reference as Exhibit "B."

27.     The execution of the HUD Deed by Debtor and Souad Oulalite was not attested by an official witness as required by O.C.G.A. § 44-14-61.  This defect in attestation is apparent from the face of the HUD Deed.

28.     The HUD Deed was not in recordable form, and, even though recorded, does not provide actual or constructive notice to a bona fide purchaser.

## COUNT I

### Claim to Avoid the First Security Interest Transfers under 11 U.S.C. § 544(a)(3)

29.     Trustee hereby re-alleges and incorporates paragraphs 1 through 28 of this Complaint as if the same were set forth verbatim herein.

30.     The Plaza Security Deed is patently defective because Debtor's execution of the Plaza Security Deed is not attested to by an official witness.

31.     Because of this patent defect, the Plaza Security Deed does not provide Trustee, in his role as a hypothetical bona fide purchaser, notice of any security interest.  *See U.S. Bank Nat'l Ass'n v. Gordon*, 289 Ga. 12, 17 (2011); *Wells Fargo Bank. N.A. v. Gordon*, 292 Ga. 474, 477 (2013).

32.     Trustee, in his role as a hypothetical bona fide purchaser of real property, has a claim in the Debtor's one-half interest in the Property that is superior to the claim of Plaza, and Trustee may avoid the First Security Interest Transfers under 11 U.S.C. § 544(a)(3).

## COUNT II

### Claim to Recover Plaza's Interest, or its value, in the Property under 11 U.S.C. § 550(a)

33.     Trustee hereby re-alleges and incorporates paragraphs 1 through 32 of this Complaint as if the same were set forth verbatim herein.

34.     Plaza is the initial transferee of an interest in the Property from Debtor, or Plaza is the entity for whose benefit the First Security Interest Transfers were made.

35.     Alternatively, Plaza is a mediate or immediate transferee of an interest in the Property from Debtor.

16050099v1

36.     Plaintiff is entitled to recover from Plaza its interest in the Property, the value of the First Security Interest Transfers, or other appropriate relief, under 11 U.S.C. § 550.

## COUNT III

**Claim for Preservation of Avoided First Security Interest Transfers under 11 U.S.C. § 551**

37.     Trustee hereby re-alleges and incorporates paragraphs 1 through 36 of this Complaint as if the same were set forth verbatim herein.

38.     The avoided First Security Interest Transfers are preserved automatically for the benefit of the Bankruptcy Estate under 11 U.S.C. § 551.

## COUNT IV

**Claim to Avoid the Second Security Interest Transfers under 11 U.S.C. § 544(a)(3)**

39.     Trustee hereby re-alleges and incorporates paragraphs 1 through 38 of this Complaint as if the same were set forth verbatim herein.

40.     The HUD Deed is patently defective because Debtor's execution of the HUD Deed is not attested to by an official witness.

41.     Because of this patent defect, the HUD Deed does not provide Trustee, in his role as a hypothetical bona fide purchaser, notice of any security interest.  *See U.S. Bank Nat'l Ass'n v. Gordon*, 289 Ga. 12, 17 (2011); *Wells Fargo Bank. N.A. v. Gordon*, 292 Ga. 474, 477 (2013).

42.     Trustee, in his role as a hypothetical bona fide purchaser of real property, has a claim in the Debtor's one-half interest in the Property that is superior to the claim of HUD, and Trustee may avoid the Second Security Interest Transfers under 11 U.S.C. § 544(a)(3).

## COUNT V

**Claim to HUD's Interest, or its value, in the Property under 11 U.S.C. § 550(a)**

43.     Trustee hereby re-alleges and incorporates paragraphs 1 through 42 of this

16050099v1

Complaint as if the same were set forth verbatim herein.

44.     HUD is the initial transferee of an interest in the Property from Debtor, or HUD is the entity for whose benefit the Second Security Interest Transfers were made.

45.     Alternatively, HUD is a mediate or immediate transferee of an interest in the Property from Debtor.

46.     Plaintiff is entitled to recover from HUD its interest in the Property, the value of the Second Security Interest Transfers, or other appropriate relief, under 11 U.S.C. § 550.

## COUNT VI

### Claim for Preservation of Avoided Second Security Interest Transfers under 11 U.S.C. § 551

47.     Trustee hereby re-alleges and incorporates paragraphs 1 through 46 of this Complaint as if the same were set forth verbatim herein.

48.     The avoided Second Security Interest Transfers are preserved automatically for the benefit of the Bankruptcy Estate under 11 U.S.C. § 551.

WHEREFORE, Trustee prays the Court enter a judgment in favor of Trustee and against the Defendants:

a)      Avoiding the First Security Interest Transfers under 11 U.S.C. § 544(a)(3);

b)      Ordering  Plaza to turnover, deliver, and transfer its interest in the Property, or the value of the same, to Trustee under 11 U.S.C. §550;

c)      Preserving the First Security Interest Transfers for the benefit of the Bankruptcy Estate under 11 U.S.C. § 551;

d)      Avoiding the Second Security Interest Transfers under 11 U.S.C. § 544(a)(3);

e)      Ordering  HUD to turnover, deliver, and transfer its interest in the Property, or the value of the same, to Trustee under 11 U.S.C. §550;

16050099v1

f)      Preserving the Second Security Interest Transfers for the benefit of the

Bankruptcy Estate under 11 U.S.C. § 551; and

g)      Granting such other and further relief that the Court deems just and proper.

Respectfully submitted this 8th day of January, 2021.

ARNALL GOLDEN GREGORY, LLP
*Attorneys for Chapter 7 Trustee*

By: */s/ Michael J. Bargar*
          Michael J. Bargar
          Ga. Bar No. 645709
          michael.bargar@agg.com

171 17th Street, N.W., Suite 2100
Atlanta, Georgia 30363
Telephone: (404) 873-7030
Facsimile: (404) 873-7031

16050099v1

**EXHIBIT "A" FOLLOWS**

16050099v1

Deed Book **13867** Pg **340**
Filed 06/01/2016 10:00 AM
28-2016-018050
Intangible Tax 546.00
Penalty 0.00
Interest 0.00
Patty Baker
Clerk of Superior Court Cherokee Cty, GA

HUDSON & MERINO, LLC
Attorneys at Law
2230 Towne Lake Pkwy.
Bldg 400-140
Woodstock, GA 30189

After Recording Return To:
**PLAZA HOME MORTGAGE, INC.**
**4820 EASTGATE MALL, SUITE 100**
SAN DIEGO, CA 92121

ATTN: POST CLOSING

Prepared By:

**PLAZA HOME MORTGAGE INC.**
**4655 SALISBURY ROAD, STE 250**
JACKSONVILLE, FL 32256

[Space Above This Line For Recording Data]

## SECURITY DEED

SERHIR
Loan #: 2416040585
PIN: 15N13B100
Serv. #: 1438264606
MIN: 100109800003212801
MERS Phone: 1-888-679-6377
Case #: 105-9546877-703

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 10, 12, 17, 19 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 15.

**(A) "Security Instrument"** means this document, which is dated **MAY 26, 2016**, together with all Riders to this document.

**(B) "Borrower"** is **BENYOUNES SERHIR AND SOUAD OUALALITE, HUSBAND AND WIFE.** Borrower is the grantor under this Security Instrument.

**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the grantee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(D) "Lender"** is **PLAZA HOME MORTGAGE INC..** Lender is a **CORPORATION** organized and existing under the laws of **CALIFORNIA**. Lender's address is **4655 SALISBURY ROAD, STE 250, JACKSONVILLE, FL 32256.**

**(E) "Note"** means the promissory note signed by Borrower and dated **MAY 26, 2016.** The Note states that Borrower owes Lender **ONE HUNDRED EIGHTY-ONE THOUSAND SIX HUNDRED FORTY-NINE AND 00/100** Dollars (U.S. **$181,649.00**) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **JUNE 1, 2046.**

**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(G) "Loan"** means the debt evidenced by the Note, plus interest, late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following

FHA Georgia Security Deed - 09/15

19368.7                                Page 1 of 14

B.S          S.O

1438264606                                                                          2416040585

Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider      ☐ Condominium Rider      ☒ Planned Unit Development Rider
☒ Other(s) [specify] **WAIVER OF BORROWER'S RIGHTS** Exh "A"-legal  Atty Affidavit
Foreclosure Disclosure

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non
-appealable judicial opinions.

**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.

**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check,
draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument,
computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an
account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine
transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L) "Escrow Items"** means those items that are described in Section 3.

**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property;
(iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or
condition of the Property.

**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the
Loan.

**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its
implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time,
or any additional or successor legislation or regulation that governs the same subject matter. As used in this
Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a
"federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan"
under RESPA.

**(Q) "Secretary"** means the Secretary of the United States Department of Housing and Urban Development
or his designee.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or
not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and
modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this
Security Instrument and the Note. For this purpose, Borrower does hereby grant and convey to MERS (solely
as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with
power of sale, the following described property located in the **COUNTY** of **CHEROKEE**:
**LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF.**
which currently has the address of **706 SWEET SPICE WAY, CANTON, GA 30114** ("Property

**FHA Georgia Security Deed - 09/15**
  19368.7                                    Page 2 of 14

B.S        S.O

1438264606                                                              2416040585

Address"):

TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 14. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority:

First, to the Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly

FHA Georgia Security Deed - 09/15



Deed Bk 13867 Pg 34

1438264606                                                                    2416040585

charge by the Secretary instead of the monthly mortgage insurance premiums;

       Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

       Third, to interest due under the Note;

       Fourth, to amortization of the principal of the Note; and,

       Fifth, to late charges due under the Note.

       Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount of the Periodic Payments.

       **3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly Mortgage Insurance premiums. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

       Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

       The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

       If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to

FHA Georgia Security Deed - 09/15

B.S    S.o

1438264606                                                          2416040585

Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as additional loss payee. Lender shall have the right to hold the policies and renewal

FHA Georgia Security Deed - 09/15
19368.7                          Page 5 of 14



1438264606                                                                                   2416040585

certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that this requirement shall cause undue hardship for the Borrower or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

If condemnation proceeds are paid in connection with the taking of the property, Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts, and then to payment of principal. Any application of the proceeds to the principal shall

FHA Georgia Security Deed - 09/15
19368.7                                                   Page 6 of 14

1438264606                                                                  2416040585

not extend or postpone the due date of the monthly payments or change the amount of such payments.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property (as set forth below). Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, making repairs, replacing doors and windows, draining water from pipes, and eliminating building or other code violations or dangerous conditions. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in

FHA Georgia Security Deed - 09/15

⟨logo⟩ 19368.7                                                Page 7 of 14



1438264606                                                                2416040585

Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security

FHA Georgia Security Deed - 09/15

☜ 19368.7                                    Page 8 of 14

B.S          S.O

1438264606                                                    2416040585

Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender.

**13. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. Lender may collect fees and charges authorized by the Secretary. Lender may not charge fees that are expressly prohibited by this Security Instrument, or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment with no changes in the due date or in the monthly payment amount unless the Note holder agrees in writing to those changes. Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**14. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**15. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

FHA Georgia Security Deed - 09/15

19368.7                                    Page 9 of 14

  

1438264606                                                    2416040585

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**16. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 17, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to reinstatement of a mortgage. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. However, Lender is not required to reinstate if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceedings; (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 17.

**19. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a

FHA Georgia Security Deed - 09/15
⬤ 19368.7                          Page 10 of 14

1438264606                                                                    2416040585

Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 14) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 17 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 19.

**20. Borrower Not Third-Party Beneficiary to Contract of Insurance.** Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower acknowledges and agrees that the Borrower is not a third party beneficiary to the contract of insurance between the Secretary and Lender, nor is Borrower entitled to enforce any agreement between Lender and the Secretary, unless explicitly authorized to do so by Applicable Law.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration**

FHA Georgia Security Deed - 09/15
👁 19368.7                                    Page 11 of 14

1438264606                                                          2416040585

following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 17 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale granted by Borrower and any other remedies permitted by Applicable Law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice of sale by public advertisement for the time and in the manner prescribed by Applicable Law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by Applicable Law.

If the Property is sold pursuant to this Section 22, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with Applicable Law.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Waiver of Homestead. Borrower waives all rights of homestead exemption in the Property.

25. Assumption Not a Novation. Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

26. Security Deed. This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

FHA Georgia Security Deed - 09/15
☜ 19368.7                          Page 12 of 14

1438264606                                                                                          2416040585

     BORROWER ACCEPTS AND AGREES to the terms and covenants contained in this Security
Instrument and in any Rider executed by Borrower and recorded with it.

     IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

_____
- BORROWER - BENYOUNES SERHIR

_____
- BORROWER - SOUAD OULALITE

Signed, sealed and delivered in the presence of:

_____
Unofficial Witness

_____
Official Witness

Notary Public, _____ County

_____
[Space Below This Line For Acknowledgment]

STATE OF _Georgia_

COUNTY OF _Cherokee_

This record was acknowledged before me on _May 26, 2016_ by **BENYOUNES SERHIR**
**SOUAD OULALITE**, who proved to me on the basis of satisfactory evidence to be the person(s) who
appeared before me.

_____ Personally Known

or

__✓__ Produced Identification   GA Drivers license # 735...
Type and # of ID (last 4 digits) _GA Drivers License # 604..._
ID Expiration Date _6/13/19_
          _6/15/19_

_____
Notary Public

STATE OF _____
My Commission Expires: _____

FHA Georgia Security Deed - 09/15
⟨⟩ 19368.7                          Page 13 of 14

1438264606

2416040585

MORTGAGE LOAN ORIGINATOR **MELISSA SIMPSON CAHILL**
NATIONWIDE MORTGAGE LICENSING SYSTEM AND REGISTRY IDENTIFICATION NUMBER
133702
MORTGAGE LOAN ORIGINATION COMPANY **NEIGHBORHOOD MORTGAGE, INC.**
NATIONWIDE MORTGAGE LICENSING SYSTEM AND REGISTRY IDENTIFICATION NUMBER
138234

**FHA Georgia Security Deed - 09/15**

19368.7                                   Page 14 of 14

**EXHIBIT "A" LEGAL DESCRIPTION**

All that tract or parcel of land lying and being in Land Lot 202 of the 15th Land District, 2nd Section, City of Canton, Cherokee County, Georgia, being known and designated as Lot 200 of Prominence Point, POD D, Prominence Court, Phase II, as shown on that certain plat of survey recorded at Plat Book 86, Pages 72-76, Cherokee County, Georgia Records, reference to said plat of survey and the record thereof being hereby made for a more complete legal description.

## PLANNED UNIT DEVELOPMENT RIDER

**SERHIR**
Loan #: 2416040585
Serv. #: 1438264606
MIN: 100109800003212801
FHA Case No: 105-9546877-703

THIS PLANNED UNIT DEVELOPMENT RIDER is made this **26TH** day of **MAY, 2016**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note ("Note") to **PLAZA HOME MORTGAGE INC.** ("Lender") of the same date and covering the Property described in the Security Instrument and located at: **706 SWEET SPICE WAY, CANTON, GA 30114** [Property Address]. The Property Address is a part of a planned unit development ("PUD") known as **PROMINENCE POINT** [Name of Planned Unit Development].

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. So long as the Owners Association (or equivalent entity holding title to common areas and facilities), acting as trustee for the homeowners, maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the property located in the PUD, including all improvements now existing or hereafter erected on the mortgaged premises, and such policy is satisfactory to Lender and provides insurance coverage in the amounts, for the periods, and against the hazards Lender requires, including fire and other hazards included within the term "extended coverage," and loss by flood, to the extent required by the Secretary, then: (i) Lender waives the provision in Paragraph 3 of this Security

👁 50.18                           Page 1 of 2                    FHA Multistate PUD Rider
                                                                                09/15



1438264606                                                                    2416040585

Instrument for the monthly payment to Lender of one-twelfth of the yearly premium installments for hazard insurance on the Property, and (ii) Borrower's obligation under Paragraph 5 of this Security Instrument to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy. Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage and of any loss occurring from a hazard. In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Security Instrument, with any excess paid to the entity legally entitled thereto.

B. Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments creating and governing the PUD.

C. If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph C shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

   BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

- BORROWER - BENYOUNES SERHIR

- BORROWER - SOUAD OULALITE

50.18                          Page 2 of 2                    FHA Multistate PUD Rider
                                                                              09/15

After Recording Return To:
**PLAZA HOME MORTGAGE, INC.**
**4820 EASTGATE MALL, SUITE 100**
**SAN DIEGO, CA 92121**
ATTENTION POST CLOSING

Prepared By:
_____
**PLAZA HOME MORTGAGE INC.**
**4655 SALISBURY ROAD, STE 250**
**JACKSONVILLE, FL 32256**

## WAIVER OF BORROWER'S RIGHTS

SERHIR
Loan #: 2416040585
Serv #: 1438264606
MIN: 100109800003212801
Case #: 105-9546877-703

GRANTOR: **BENYOUNES SERHIR AND SOUAD OUALALITE, HUSBAND AND WIFE**

LENDER: **PLAZA HOME MORTGAGE INC.**

DATE OF SECURITY DEED: **MAY 26, 2016**

BY EXECUTION OF THIS PARAGRAPH, GRANTOR EXPRESSLY: (1) ACKNOWLEDGES THE **RIGHT TO** ACCELERATE THE DEBT AND THE **POWER OF ATTORNEY** GIVEN HEREIN TO LENDER TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS REQUIRED TO BE GIVEN UNDER THE PROVISIONS HEREOF: (2) **WAIVES** ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES. THE VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE PROVIDED HEREOF; (3) ACKNOWLEDGES THAT GRANTOR HAS READ THIS DEED AND SPECIFICALLY THIS PARAGRAPH AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF SAID DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR AND GRANTOR HAS BEEN AFFORDED AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING THIS DEED; (4) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY GRANTOR AS PART OF A BARGAINED FOR LOAN TRANSACTION; AND (5) AGREES THAT THE PROVISIONS HEREOF ARE INCORPORATED INTO AND MADE A PART OF THE SECURITY DEED.

**⟡** 1009.28                              Page 1 of 3



Deed BK 23867 PG 350

1438264606

2416040585

READ AND AGREED BY GRANTOR:

- BORROWER - BENYOUNES SERHIR

- BORROWER - SOUAD OUALALITE

Signed, sealed and delivered in the presence of:

Unofficial Witness

Notary Public

My Commission Expires:

DAVID C. MERINO
MY COMMISSION EXPIRES
NOVEMBER 5, 2018
NOTARY PUBLIC
CHEROKEE COUNTY, GEORGIA

1009.28                    Page 2 of 3

1438264606                                                                                          2416040585

### CLOSING ATTORNEY'S AFFIDAVIT

Before the undersigned attesting officer personally appeared the undersigned closing attorney, who, having been first duly sworn according to law, states under oath as follows:

In closing the above loan, but prior to the execution of the Deed to Secure Debt and "Waiver of the Borrower's Rights" by the Borrower(s), I reviewed with and explained to the Borrower(s) the terms and provisions of the Deed to Secure Debt and particularly the provisions thereof authorizing the Lender to sell the secured property by a nonjudicial foreclosure under a power of sale, together with the "Waiver of Borrower's Rights" and informed the Borrower(s) of Borrower's rights under the Constitution of the State of Georgia and the Constitution of the United States to notice and a judicial hearing prior to such foreclosure in the absence of a knowing, intentional and willing contractual waiver by Borrower(s) of Borrower's rights. After said review with and explanation to Borrower(s), Borrower(s) executed the Deed to Secure Debt and "Waiver of Borrower's Rights."

Based on said review with and explanation to the Borrower(s), it is my opinion that Borrower(s) knowingly, intentionally and willingly executed the waiver of Borrower's constitutional rights to notice and judicial hearing prior to any such nonjudicial foreclosure.

_____
Closing Attorney

Sworn to and subscribed before me on _____

_____
Notary Public

My Commission Expires: _____

1009.28                                        Page 3 of 3

Deed BK 13867 PG 360

# GEORGIA FORECLOSURE DISCLOSURE

## Made Pursuant to Ga. Comp. R. & Regs. r. 80-11-1-.01(9)

SERHIR
Loan #: 2416040585
Serv. #: 1438264606
MIN: 100109800003212801

Date: MAY 26, 2016
Lender: PLAZA HOME MORTGAGE INC.

Borrower(s): BENYOUNES SERHIR
SOUAD OULALITE

Property Address: 706 SWEET SPICE WAY
CANTON, GA 30114

O.C.G.A. Section 7-1-1014(3) requires that we inform you that if you fail to meet any condition or term of the documents that you sign in connection with obtaining a mortgage loan you may lose the property that serves as collateral for the mortgage loan through foreclosure.

By signing below, you acknowledge receipt of this Disclosure.

_____ 05 26 16
- BORROWER - BENYOUNES SERHIR - DATE -

_____ 05 26 16
- BORROWER - SOUAD OULALITE - DATE -

1011.18                                    Page 1 of 1

**EXHIBIT "B" FOLLOWS**

DEED BOOK: 14541 PG: 1987   Filed: 10/13/2020 08:30 AM   Clerk Doc number: 28-2020-046615
Rec: $25.00 Intangible Tax: $0.00 Penalty: $0.00 Interest: $0.00
Patty Baker, Clerk of Superior Court - Cherokee County, GA
Participant IDs: 0172969296   Submitter ID: 7067927936

After recording return to:
SERVICELINK
ATTN: LOAN MODIFICATION
SOLUTIONS
3220 EL CAMINO REAL
IRVINE, CA 92602

Tax Parcel ID No.: 15N13H200

———————————————[Space Above This Line For Recording Data]———————————————

*200411728*

LOAN NO.: 1-4460602

FHA/VA Case No.: 105-9546877

# GEORGIA PARTIAL CLAIM SECURITY DEED
## (Secondary Lien)

THIS SUBORDINATE DEED OF TRUST ("Security Instrument") is given on **September 17, 2020**. The Borrower is **BENYOUNES SERHIR AND SOUAD OULALITE**
Whose address is **706 SWEET SPICE WAY, CANTON, GA 30114-1264**
("Borrower"). This Security Instrument is given to the Secretary of Housing and Urban Development, and whose address is 451 Seventh Street, SW, Washington, DC 20410 ("Lender"). Borrower owes Lender the principal sum of **Five Thousand Three Hundred Seventy and 12/100ths** Dollars (U.S. **$5,370.12**). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for the full debt, if not paid earlier, due and payable on **June 1, 2046**. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, advanced under Paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, warrant, grant and convey to the Lender, with the power of sale the following described property located in **CHEROKEE** County, Georgia:

**SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF:**

which has the address of **706 SWEET SPICE WAY, CANTON, GA 30114**, ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of



DEED BOOK:14541 PG:1988   Filed: 10/13/2020 08:30 AM   Clerk File Number: 28-2020-046615
Rec: $25.00 Intangible Tax: $0.00 Penalty: $0.00 Interest: $0.00
Patty Baker, Clerk of Superior Court - Cherokee County, GA
ParticipantIDs: 0172969296   SubmitterID: 7067927936

record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances or record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant agree as follows:

UNIFORM COVENANTS.

**1. Payment of Principal.** Borrower shall pay when due the principal of the debt evidenced by the Note.

**2. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**3. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the term of this Security Instrument or the Note without that Borrower's consent.

**4. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to: Department of Housing and Urban Development, Attention: Single Family Notes Branch, 451 Seventh Street, SW, Washington, DC 10410 or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**5. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**6. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.



DEED BOOK 14541 PG:1989   Filed: 10/13/2020 08:30 AM   Clerk File Number: 28-2020-046615
Rec: $25.00 Intangible Tax: $0.00 Penalty: $0.00 Interest: $0.00
Patty Baker, Clerk of Superior Court - Cherokee County, GA
ParticipantIDs: 0172969296   SubmitterID: 7067927936

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**7. Acceleration; Remedies.** If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 4 of the Subordinate Note, Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. § 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Secretary under this paragraph or applicable law.

**Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in the Note or this Security Instrument. The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale granted by Borrower and any other remedies permitted by Applicable Law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 7, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall give a copy of a notice of sale by public advertisement for the time and in the manner prescribed by Applicable Law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.**

**Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by Applicable Law. If the Property is sold pursuant to this Section 7, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with Applicable Law.**

**8. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**9. Waiver of Homestead.** Borrower waives all rights of homestead exemption in the Property.

19028GA 06/19



DEED BOOK:14541 PG:1990   Filed: 10/13/2020 08:39 AM   Clerk File Number: 28-2020-046615
Rec: $25.00 Intangible Tax: $0.00 Penalty: $0.00 Interest: $0.00
Patty Baker, Clerk of Superior Court - Cherokee County, GA
ParticipantIDs: 0172969296  SubmitterID: 7067927936

**10. Assumption Not a Novation.**  Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

**11. Security Deed.**  This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

### REQUEST FOR NOTICE OF DEFAULT
### AND FORECLOSURE UNDER SUPERIOR
### MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any security deed, mortgage, deed of trust or other encumbrance with a lien which has priority over this Security Instrument to give notice to Lender, at Lender's address set forth on page one of this Security Instrument, of any default under the superior encumbrance and of any sale or other foreclosure action.

BORROWER ACCEPTS AND AGREES to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

Signed, sealed and delivered in the presence of:

Borrower  - **BENYOUNES SERHIR**                          Date: 09 24 2020
Mailing Address: **706 SWEET SPICE WAY, CANTON, GA  30114-1264**

Borrower  - **SOUAD OULALITE**                            Date: 09 24 2020
Mailing Address: **706 SWEET SPICE WAY, CANTON, GA  30114-1264**



DEED BOOK 14841 PG:1991   Filed: 10/13/2020 08:30 AM   Clerk File Number: 28-2020-046615
Rec: $25.00 Intangible Tax: $0.00 Penalty: $0.00 Interest: $0.00
Patty Baker, Clerk of Superior Court - Cherokee County, GA
ParticipantIDs: 0172969296   SubmitterID: 7067927936

## ACKNOWLEDGMENT

State of Georgia §
County of Cherokee §
§

This record was acknowledged before me on September 24 2020 by **BENYOUNES
SERHIR AND SOUAD OULALITE** who proved to me on the basis of satisfactory evidence to be the person(s)
who appeared before me.

_____ Personally Known
or
_____ Produced Identification

Type and # of ID (last 4 digits) GA DL 7356   GA DL 6045

ID Expiration Date 04/28/2024   11/14/2020

Xhhelly Beltran   09/24/2020
Unofficial Witness Signature   Date

Suhelly Beltran
Witness Printed, Typewritten, or Stamped Name

Teresa Pantaleon
Signature of Notary Public

Teresa Pantaleon
(Name of Notary, Typed, Stamped or Printed)
Notary Public State of Georgia

(Stamp/Seal)

My Commission Expires: 01/24/2021

TERESA PANTALEON
NOTARY
EXPIRES
GEORGIA
January 24, 2021
PUBLIC
CHEROKEE COUNTY

**Loan Originator Organization:** PennyMac Loan Services, LLC, NMLSR ID: 35953
**Individual Loan Originator's Name NMLSR ID:** N/A

Georgia Partial Claim Security Deed-Single Family-(Secondary Lien)
Page 5 of 6
19028GA 06/19



DEED BOOK 14541 PG:1992   Filed: 10/13/2020 08:30 AM   Clerk File Number: 28-2020-046615
Rec: $25.00 Intangible Tax: $0.00 Penalty: $0.00 Interest: $0.00
Patty Baker, Clerk of Superior Court - Cherokee County, GA
ParticipantIDs: 0172969296 SubmitterID: 7067927936

EXHIBIT A

**BORROWER(S): BENYOUNES SERHIR AND SOUAD OULALITE**

**LOAN NUMBER: 1-4460602**

**LEGAL DESCRIPTION:**

**STATE OF GEORGIA, COUNTY OF CHEROKEE, AND DESCRIBED AS FOLLOWS:**

**ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 202 OF THE 15TH LAND DISTRICT, 2ND SECTION, CITY OF CANTON, CHEROKEE COUNTY, GEORGIA, BEING KNOWN AND DESIGNATED AS LOT 200 OF PROMINENCE POINT, POD D, PROMINENCE COURT, PHASE II, AS SHOWN ON THAT CERTAIN PLAT OF SURVEY RECORDED AT PLAT BOOK 86, PAGES 72-76, CHEROKEE COUNTY, GEORGIA RECORDS, REFERENCE TO SAID PLAT OF SURVEY AND THE RECORD THEREOF BEING HEREBY MADE FOR A MORE COMPLETE LEGAL DESCRIPTION.**

**Parcel ID Number: 15N13H200**
**ALSO KNOWN AS: 706 SWEET SPICE WAY, CANTON, GA 30114**

